1

2                  **E-Filed 5/2/06**

3

4

5

6

7             NOT FOR CITATION

8      **IN THE UNITED STATES DISTRICT COURT**

9     **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10           **SAN JOSE DIVISION**

11

| | |
|---|---|
| 12   ADVANTA CORPORATION, an Indian Corporation, | Case No. C 05-2895 JF |
| 13                   Plaintiff, | ORDER[1] CONDITIONALLY GRANTING MOTION TO DISMISS ON GROUND OF *FORUM NON CONVENIENS* |
| 14         v. | |
| 15   DIALOGIC CORPORATION, a New Jersey Corporation, et al. | [re: docket no. 15] |
| 16                 Defendants. | |
| 17 | |
| 18 | |

19      On July 15, 2005, Plaintiff Advanta Corporation ("Advanta"), an Indian corporation, filed

20 the instant complaint against Defendants Dialogic Corporation ("Dialogic"), Intel Semiconductor

21 Limited ("ISL") and Does 1-10.  Plaintiff alleges two claims for relief: (1) breach of contract and

22 (2) tortious interference with prospective economic advantage.  Plaintiff alleges that it is entitled

23 to money damages, exemplary damages and costs of suit.  On November 7, 2005, Defendants

24 filed the instant motion to dismiss on the ground of *forum non conveniens*.  Plaintiff opposes the

25 motion.  Plaintiff filed a first amended complaint ("FAC") deleting Dialogic and adding Intel

26 Corporation as a defendant on January 26, 2006, but subsequently withdrew the FAC on

27

28         [1]  This disposition is not designated for publication and may not be cited.

1  February 10, 2006.  The Court has considered the parties' briefs as well as the oral argument

2  presented at the hearing on April 28, 2006.  For the reasons set forth below, the motion will be

3  conditionally granted.

## I. BACKGROUND

5      This action arises from a business relationship between Plaintiff and Dialogic from 1997

6  to 2002.  Plaintiff alleges the following: Plaintiff is a corporation registered in the State of

7  Maharashtra, India, with its principal place of business in Mumbai, India.  Complaint ("Compl.")

8  ¶ 1.  Dialogic, a New Jersey corporation with offices in this District, entered into an agreement

9  with Plaintiff in April 1997.  *Id.* ¶¶ 2, 6.  Under this one-year agreement, Plaintiff served as the

10  sole distributor of Dialogic's hardware and software products in India and fulfilled Dialogic's

11  "express purpose of opening and exploiting the Indian market."  *Id.*  In June 1999, Dialogic was

12  acquired by Intel Corporation ("Intel").  *Id.* ¶ 9.  Upon learning this information after filing the

13  complaint, Plaintiff filed a FAC adding Intel and deleting Dialogic as a Defendant.  Plaintiff

14  subsequently withdrew the FAC, however; accordingly, the named defendants remain those

15  named in the original complaint, Dialogic and ISL.

16      In 2001, Plaintiff had several meetings with Intel/Dialogic employees Anil Sibnis and

17  Robert Heymann and ISL's attorney Jim Jeffs for the purpose of negotiating a new distributor

18  agreement ("Agreement").  At the time the Agreement was executed, Plaintiff's president,

19  Siddarth S. Mehta, allegedly intended to litigate any disputes in "either California's state courts

20  or in California's federal courts."  Declaration of Siddharth S. Mehta in Support of Plaintiff's

21  Opposition to Motion to Dismiss (hereinafter "Mehta Decl.") ¶¶ 2-6.  The Agreement entered on

22  July 17, 2001 provides that "[t]his Agreement shall be governed by and construed according to

23  the laws of the State of California and the parties hereto hereby irrevocably submit to the non-

24  exclusive jurisdiction of the California courts."  Agreement, ¶ 24.  On November 7, 2001,

25  Dialogic assigned the Agreement to ISL, a Delaware corporation and a subsidiary of Intel.

26  Compl. ¶¶ 3, 10.  The Agreement later was terminated effective October 18, 2002 due to

27  Defendants' alleged breach of contract and tortious interference with prospective economic

28
                                            2

1   advantage. *Id.*

2       From 1997 until 2002, Mr. Sibnis allegedly told Indian customers not to buy from

3   Plaintiff because of its high price. *Id.* ¶ 12(b). Mr. Sibnis also allegedly told Plaintiff's Indian

4   customers that Plaintiff is selling fake, used, or pirated goods and that Dialogic/Intel would not

5   provide technical support or warranties to Plaintiff's customers. *Id.* ¶¶ 12 (m)-(p).

6       Defendants represent that the following additional facts are true: Dialogic was Intel's

7   subsidiary between 1999 and 2003. Declaration of Daivd R. Burtt, ¶¶ 2-4, Exs. 1-4. Dialogic

8   designs, manufactures, and sells hardware and software for telecommunications systems,

9   including systems used by "call centers, a major industry in India." Declaration of James H. Jeffs

10  in Support of Defendants' Motion to Dismiss, (hereinafter "Jeffs Decl.") ¶ 3. The headquarters

11  of Dialogic's Asia-Pacific sales and marketing operations is located Singapore; Dialogic also has

12  a sales office in Bangalore, India. *Id.*

13      Intel generally conducts its sales, marketing, and customer support operations through

14  regional subsidiaries in the Asia-Pacific region. *Id.* ¶ 6. Intel conducts marketing and customer

15  support operation through its local marketing organizations ("LMOs"), such as Intel Technology

16  India Pvt., Ltd. ("Intel (India)") and Intel Semiconductor, Ltd., ("Intel (Hong Kong)"). *Id.*

17  Defendant ISL, as a subsidiary of Intel, conducts and transacts Intel's sales in the Asia-Pacific

18  region. *Id.* ISL is a Delaware corporation and does not have any offices or employees in the

19  United States. *Id.*

20      Under the distribution agreements in 1997 and 2001, Plaintiff was authorized to sell

21  Dialogic products only in India. *Id.* ¶ 8, Ex. A ¶ 1, Ex. B ¶ 1. Most of the dealings between

22  Dialogic, ISL, Intel's LMOs and Plaintiff under the 2001 Agreement allegedly took place

23  primarily in India. *Id.* ¶ 12. Plaintiff allegedly had very few dealings with anyone working in the

24  United States for Dialogic or Intel. *Id.*

25      Prior the execution of the Agreement in July 2001, Mr. Mehta suggested "that the

26  contract be subject to the laws of either NJ or CA - Intel may choose which it prefers – and we

27  should have a choice of suing Intel either in India or America (at our option) – this is because it

28

Case No. C 05-2895 JF
ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
(JFEX2)

1  may not be practical of us to travel to America frequently."  Reply Declaration of James H. Jeffs

2  in Support of Defendants' Motion to Dismiss, Ex. 2, p. 5-6.

3       Between 1997 and March 2002, Anil Sibnis[2] was the Dialogic employee responsible for

4  working with Advanta in Dialogic's office in Bangalore.  *Id.* ¶ 9.  After Mr. Sibnis's departure,

5  Patrick Mathias assumed primary responsibility for working with Advanta between March 2002

6  and 2004.  *Id.*

7       In April 2002, in accordance with the terms of the Agreement, ISL gave Plaintiff a ninety-

8  day notice to terminate the Agreement, effective on July 22, 2002.  Jeffs Decl.  ¶ 7.

9                               **II.  LEGAL STANDARD**

10       "The doctrine of *forum non conveniens* permits an American court to decline to exercise

11  jurisdiction over a case when a foreign tribunal can more appropriately conduct the litigation."

12  *Howe v. Goldcorp Invs., Ltd.*, 946 F.2d 944, 945 (1st Cir. 1991) (Breyer, C.J.), citing *Piper*

13  *Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981), and *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

14  507-08 (1947).  "A district court has discretion to decline to exercise jurisdiction in a case where

15  litigation in a foreign forum would be more convenient for the parties."  *Lueck v. Sundstrand*

16  *Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001).  In deciding whether to dismiss an action based on

17  *forum non conveniens*, a court must take into account various considerations related to fairness

18  and convenience.  *See Piper Aircraft*, 454 U.S. at 250; *Gulf Oil*, 330 U.S. at 507-08; *Alpha*

19  *Therapeutic Corp. v. Nippon Hoso Kyokai*, 199 F.3d 1078, 1090 (9th Cir. 1999).  The party

20  moving for dismissal under this doctrine must demonstrate two things to overcome the great

21  deference due to a plaintiff's choice of forum: (1) the existence of an adequate alternative forum

22  and (2) that the balance of relevant private- and public-interest factors favors dismissal.  *See id.*;

23  *Creative Tech., Ltd. v. Aztech Sys. Pte, Ltd.*, 61 F.3d 696, 699 (9th Cir. 1995).

24                               **III. DISCUSSION**

25       Defendants assert that Plaintiff is entitled to little or no deference to its forum selection

26

27       [2] Plaintiff spells the name "Sibnis" in its briefs and declarations; the Court presumes that
    Mr. "Sabnis" and Mr. "Sibnis" are the same person.

28                                         4

1  because Plaintiff is a foreign corporation with no operations in the United States, the underlying

2  lawsuit has no connection to California, and the *permissive* forum selection clause in the

3  Agreement has no impact on normal *forum non conveniens* analysis.  Defendants also assert that

4  India is an adequate alternative forum because Defendants are amenable to service of process in

5  India and Indian courts provide Plaintiff with an adequate remedy.  Finally, Defendants argue

6  that both the private interest and public interest factors weigh heavily in favor of dismissal.

7  Plaintiff contends that this Court is not required to dismiss its action because the forum

8  selection clause is mandatory and thus subject to the *Bremen* doctrine.[3]  Plaintiff also asserts that

9  India is not an adequate forum on the ground that there will be excessive delays in the Indian

10  judicial system.

11  **A.     The Forum Selection Clause**

12  The threshold question is whether the forum selection clause in the Agreement is

13  mandatory or permissive.  The clause reads as follows: "[t]his Agreement shall be governed by

14  and construed according to the laws of the State of California and the parties hereto hereby

15  irrevocably submit to the non-exclusive jurisdiction of the California courts."  Agreement, ¶ 24.

16  Despite the express use of the term "non-exclusive," Plaintiff argues that the clause mandates

17  exclusive venue in California.  Defendants argue that while the parties consented to personal

18  jurisdiction in California, there is no agreement as to venue.  A primary rule of contract

19  interpretation is that "'[t]he common or normal meaning of language will be given to the words

20  of a contract unless circumstances show that in a particular case a special meaning should be

21  attached to it.'" *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)

22  (citing 4 S. Williston, *A Treatise on the Law of Contracts* § 618 (W. Jaeger 3d ed. 1961)).  Here,

23

24  [3]  *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972).  In *Bremen*, the Court ruled that a
"freely negotiated mandatory forum selection is enforceable unless the party challenging its
25  enforcement can 'clearly show that enforcement would be unreasonable and unjust, or that the
clause was invalid for such reasons as fraud or overreaching,' or that 'trial in the [chosen] forum
26  will be gravely difficult and inconvenient that he will for all practical purposes be deprived of his
day in court.'" Plaintiff's Opposition to Motion to Dismiss, p. 2 (citing *AAR Intern., Inc. v.*
27  *Nimelias Enterprises S.A.*, 250 F.3d 510, 525 (7th Cir. 2000)).

28
Case No. C 05-2895 JF
ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
(JFEX2)

1    the plain meaning of the language is that California law is applicable and that California courts

2    have jurisdiction.  By its own terms, however, such jurisdiction is not exclusive.  "To be

3    mandatory, a clause must contain language that clearly designates a forum as the exclusive one."

4    *Northern Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037

5    (9th Cir. 1995).  *See also Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273,

6    275 (9th Cir. 1984).[4]  Accordingly, without explicit language indicating that the parties consented

7    to exclusive jurisdiction or venue in the California courts, the forum selection clause in the

8    Agreement is unambiguously permissive and the *Bremen* doctrine analysis does not apply.

9        Because it reaches the conclusion that the forum selection clause is unambiguously

10   permissive, the Court finds it unnecessary to discuss whether Mr. Mehta intended to make

11   California the exclusive venue.

12   **B.    India As An Adequate Alternative Forum**

13       Plaintiff contends that India is an inadequate forum because there are unreasonable delays

14   in the administration of justice in India and the instant case is barred by the Indian statute of

15   limitations.  Defendants argue that the instant action could be litigated in the Bangalore District

16   Court in a timely manner, that Indian courts are capable of applying California contract and tort

17   law, and that Plaintiff's filing of the instant action is within the Indian statute of limitations.

18       Defendants bear the burden of showing that (1) they are amenable to service of process in

19   the alternative forum and (2) the forum provides Plaintiff with some remedy for the wrong at

20   issue.  *Lueck*, 236 F.3d at 1143 (quoting *Piper Aircraft*, 454 U.S. at 254 n. 22)).  "The key

21   determination is whether the remedy provided by the alternative forum is so clearly inadequate or

22   unsatisfactory that it is no remedy at all."  *Creative Tech., Ltd.,* 61 F.3d at 699.  Here, the first

23   element of the test is readily satisfied because Defendants Dialogic and ISL declare that they

24   consent to jurisdiction in the Bangalore District Court in India and "agree to accept service of

25   _____

26       [4]  The court held that the language of the clause clearly mandates exclusive jurisdiction:
     "any and all disputes arising out of or in connection with this Agreement shall be litigated only in
27   the Superior Court for Los Angeles, California (and in no other)."

28                                              6
     Case No. C 05-2895 JF
     ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
     (JFEX2)

1    process for any subsequent action." Jeffs Decl. ¶ 16.

2       Defendants provide extensive affidavits from former Chief Justice Kamal Narain Singh

3 of the Indian Supreme Court, a practicing Bangalore attorney, and an attorney from Intel (Hong

4 Kong) who is familiar with practice in Indian courts. Together, these affidavits show the

5 following: (1) the backlog of cases in the Indian court system is overstated by Plaintiff because

6 there are over 10,000 subordinate court judges, in addition to as many as 648 High Court judges,

7 currently handling cases in India; (2) the Indian Code of Civil Procedure was amended in 1999

8 and 2002 to expedite the resolution of civil cases; (3) a Bangalore attorney provides a list of

9 similar civil disputes which have been disposed of by the Bangalore District within three years of

10 commencement, and his own experience suggests that civil and commercial suits could be

11 concluded within three years of filing in Bangalore; (4) the Bangalore District Court has

12 extensive experience in commercial and contract cases; (5) Under the Indian Evidence Act,

13 Indian judges are permitted to appoint foreign law experts to assist in interpreting foreign laws;

14 and (6) Indian courts routinely apply English and United States precedents to adjudicate disputes.

15       Plaintiff argues that Indian judicial system has endemic delays that makes it an inadequate

16 forum. Relying on an affidavit of former judge S.K. Desai of the Bombay High Court and the

17 2001 India Parliament report, Plaintiff asserts the following: (1) Indian courts have a huge

18 backlog and civil cases in Bangalore often take fifteen to twenty-five years to resolve; (2) the

19 instant case is estimated to be resolved in fifteen to twenty years at the trial court level, plus an

20 additional ten years for two stages of appeal; and (3) there are problems in implementing

21 California law in India because of difficulty locating lawyers or judges experienced in California

22 law. Plaintiff also cites *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1228 (3rd Cir.

23 1995), holding that "wherever the line might be drawn separating tolerable delay from

24 intolerable. . . delays of up to a quarter of a century fall on the intolerable side of that line.

25 Delays of such egregious magnitude would render a remedy 'clearly inadequate under *Piper*

26 *Aircraft*.'"

27       "A litigant asserting inadequacy or delay must make a powerful showing." *Tuazon v. R.J.*

28

7

Case No. C 05-2895 JF
ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
(JFEX2)

1    *Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006).  The Court finds that Plaintiff has

2    failed to make a sufficient showing here.  Mr. Desai's assertions about the excessive delays in the

3    Indian court system are based upon personal experience with the Bombay High Court, not the

4    Bangalore District Court.  Defendants have submitted not only the opinion of a former Supreme

5    Court Justice, but also a list of cases in the Bangalore courts that have been disposed of within

6    three years.  While Plaintiff cites *Bhatnagar* in support of its position, Defendants cite several

7    other cases concluding that India is an adequate forum.[5]  Finally, similarities between English-

8    based Indian contract law and United States contract law, and the admission of foreign law

9    experts' testimony under the Indian Evidence Act, indicate that Indian judges are capable of

10   applying and interpreting California law.

11        Plaintiff and Defendants disagree on the application of the Indian statute of limitations.

12   Both parties agree that India's statute of limitations period for contract actions is three years and

13   that an Indian court may toll the limitations period from the date of the United States filing and

14   treat that filing date as if the action had been filed in India.  Plaintiff asserts that the limitations

15   period began running on July 18, 2001, the date of the signing of the Agreement.  Defendants

16   argue that the limitations period began running on the date of the alleged wrongful termination of

17   the Agreement, July 18, 2002, less than three years before the filing of Plaintiff's complaint in

18   this Court.  Based on Section 22 of the 1963 Limitation Act of Indian law, "[i]n the case of a

19   continuing breach of contract . . . a fresh period of limitation begins to run at every moment of

20   the time during which breach. . . continues."  Reply Affidavit of Singh, ¶ 1.4.  Accordingly, the

21   Court concludes that the Indian statute of limitations began running on the date of alleged breach,

22   July 18, 2001, and that the Indian statute of limitations does not bar the instant case.

23

24        [5]  Defendants cite the following cases in their reply brief: *Neo Sack, Ltd. V. Vinmar
     Impex, Inc.*, 810 F. Supp. 829, 834 (S.D. Tex. 1993) ("while [] parties might experience more
25   delay in India, this Court cannot conclude that an Indian forum would not provide an adequate
     remedy"); *Chhawchharia v. Boeing Co.*, 657 F. Supp. 1157, 1160 (S.D.N.Y. 1987) (despite the
26   backlog, India found to be an adequate alterative forum); *In re Union Carbide Corp. Gas Plant
     Disaster*, 634 F. Supp. 842, 852 (S.D.N.Y. 1986), *aff'd as modified*, 809 F.2d 195 (2d Cir. 1987);
27   *PLM Int'l., Inc. V. Nath*, No. C 98-01912 SC, 1998 WL 514045 at *1 (N.D.Cal. Aug. 17, 1998).

28
                                               8

1    **C.      Private And Public Interest Factors**

2          Once an adequate forum is shown to exist, the Court must consider whether the balance

3    of private- and public interest factors supports dismissal.  The private-interest factors include:

4    "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants;

5    (3) the relative ease of access to sources of proof; (4) whether unwilling witnesses can be

6    compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the

7    judgment; and (7)  all other practical problems that make trial of a case easy, expeditious and

8    inexpensive." *Lueck*, 236 F.3d at 1145.  "The district court should look to any or all of the above

9    factors which are relevant to the case before it, giving appropriate weight to each." *Id.*

10         "The site where the events in question took place and most of the evidence is located is

11   usually the most efficient forum." *Fields v. Sedgwich Associated Risks*, *Ltd.*, 796 F.2d 299, 302

12   (9th Cir. 1986).  Here, the conduct about which Plaintiff complains and the injury it allegedly

13   suffered occurred in India, not in California.  Plaintiff is an Indian corporation which has no

14   connection to the United States  Defendants Dialogic and ISL, although incorporated in the

15   United States, conduct most of their business in India and the Asia Pacific region.  All of the

16   current and former employees of Plaintiff, the relevant Dialogic sales persons (Sibnis and

17   Mathias), and many third-party customer witnesses who are believed to have information

18   material to the claims asserted in the complaint reside in India.  Most of parties' relevant files

19   and records are in India or in the Asia-Pacific region.

20         Because India is not a signatory to the Hague Convention, the parties will not be able to

21   compel discovery or testimony in the United States from unwilling witnesses in India, such as

22   former employees and relevant customer witnesses.  *See Neo Sack Ltd. v. Vinmar Impex, Inc.*,

23   810 F. Supp. 829, 836 (S.D. Tex. 1993).  Further, the cost of transportation of the willing

24   witnesses from India to testify in California would be expensive and time-consuming.

25   Delaware's Uniform Foreign Money-Judgments Recognition Act considers a foreign judgment

26   enforceable in Delaware if it is final and conclusive.  10 Del. C. §§ 4802-4803.  Thus, a

27   judgment rendered against ISL in India is deemed enforceable in Delaware, where ISL is

28                                                                        9

1  incorporated. Accordingly, combination of these factors weigh in favor of India as a proper

2  forum, not California.

3        In addition to private factors to support dismissal, the court must also consider public

4  interest factors to determine dismissal for *forum non conveniens*. These factors include: (1) any

5  local interest in the lawsuit; (2) the court's familiarity with governing law; (3) burden on local

6  courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to

7  this forum. *Lueck*, 236 F.3d at 1147.

8        California has only a weak interest in adjudicating a breach of contract dispute that arose

9  in India between and Indian national and American corporations operating wholly in India.

10  While California law applies, it appears that the Indian courts routinely apply English and United

11  States law when relevant, and the Indian Evidence Act allows testimony of foreign law experts.

12  It would be inappropriate to expend the resources of this Court to resolve a dispute that has such

13  a tenuous connection to California. Virtually every event at issue in this matter occurred in India

14  and virtually all witnesses in the case reside in India or in the Asia-Pacific region. The cost of

15  transportation of even willing witnesses to California would be substantial. On balance, public

16  interest factors favor India as a forum.

17  **D.    Conditional Nature Of Order**

18        The Court is persuaded that granting Defendants' motion is appropriate for the reasons

19  discussed above. However, the Court cannot be certain that it is correct in assuming that the

20  Indian statute of limitations will not bar Plaintiff's claims and that Plaintiff will be able to litigate

21  those claims in India without facing many years of delay. The Court's order therefore is

22  conditional; if the assumptions upon which this order is based prove to be untrue, Plaintiff may

23  return to this Court and request that the instant case be reopened.[6]

24

25

26

27      [6] Obviously, with respect to the issue of delay, Plaintiff would have to show that it had been diligent in attempting to litigate in India before seeking to reopen the case here.

28

Case No. C 05-2895 JF
ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
(JFEX2)

1

**IV. ORDER**

2

Plaintiff's motion to dismiss on the ground of *forum non conveniens* is

3

CONDITIONALLY GRANTED as set forth above.

4

5

6

7

8

9

10

11

12

DATED:  May 2, 2006

13

_____
JEREMY FOGEL
United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

1    This Order has been served upon the following persons:

2    Christopher Ashworth      ca@svlg.com, llc@svlg.com; al@svlg.com; keb@svlg.com

3    David R. Burtt     dburtt@perkinscoie.com, clegg@perkinscoie.com; ;
     mlnelson@perkinscoie.com; ; ghoang@perkinscoie.com;

4

5    Jonmi Nai On Koo      jkoo@perkinscoie.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-2895 JF
ORDER CONDITIONALLY GRANTING MOTION TO DISMISS
(JFEX2)